DISTRICT OF OREGON
FILED
June 08, 2020
Clerk, U.S. Bankruptcy Court

Below is an opinion of the court.

DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>**Thomas Bryon Cattell,**<br><br>Debtor. | Chapter 13<br><br>Case No. 19-33823-dwh13 |
| **Thomas Bryton Cattell**,<br><br>Plaintiff,<br><br>v.<br><br>**Victoria D. Deeks** and **Carol Williams**,<br><br>Defendants. | Adversary Proceeding No. 19-03123-dwh (lead action)<br>Relates to Adversary Proceeding No. 20-03024-dwh<br><br>MEMORANDUM DECISION DENYING MOTION TO DISMISS BY DEFENDANT PRICEWATERHOUSECOOPERS LLP<br><br>NOT FOR PUBLICATION |
| **Thomas Bryon Cattell**,<br><br>Plaintiff,<br><br>v.<br><br>**Alison Hohengarten**; **Francis Hansen & Martin LLP**, an Oregon limited liability partnership; **Connor Deeks**; and **PricewaterhouseCoopers LLP**,<br><br>Defendants. | Adversary Proceeding No. 20-03024-dwh |

## I. Introduction

In No. 20-3024, defendant PricewaterhouseCoopers LLP (PwC) moves to dismiss the complaint by plaintiff-debtor, Thomas Bryon Cattell. For the reasons that follow, I will deny the motion.

## II. Background

The two actions captioned above are jointly administered. The lead action is No. 19-3123, and the other is No. 20-3024. Unless otherwise specified, references to "this action" are to No. 20-3024.

Cattell, the chapter 13 debtor, filed the complaint against Connor Deeks, PwC, and others.[1] Connor Deeks is the son of Cattell's alleged former partner, Victoria D. Deeks, who is a defendant in the lead action. Because Connor and Victoria Deeks share a last name, for clarity I use their first names.

In general, the complaint alleges that Connor took control of accounts held in the name of Victoria but that allegedly were property of a partnership of Victoria and Cattell, and Connor was engaged in a systematic plan to "lock the Plaintiff [Cattell] out of all the partnership accounts and divert as much money as possible to Victoria at the expense of the Plaintiff [Cattell]."[2] Based on those facts, the complaint asserts claims against Connor and PwC for breach of fiduciary duty, financial abuse of a vulnerable person, and promissory estoppel. The stated bases for asserting liability against PwC is that Connor either "was acting in the course and scope of his position with PWC or in the alternative held himself out as an agent of PWC" and that he "used the offices and electronic systems of PwC to cloak himself in . . . apparent authority."[3]

---

[1] Docket item (DI) 1-1 (complaint).
[2] Complaint at 19, ¶ 70.
[3] Complaint at 2.

## III. Analysis

### *A. Motion to dismiss*

PwC has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), which authorizes dismissal for failure to state a claim and is applicable to this action through Federal Rule of Bankruptcy Procedure 7012. In deciding a motion to dismiss, I must accept the factual allegations of the complaint as true. But "labels and conclusions" are not factual allegations and can't be accepted as true.[4] Instead, I must examine the well-pleaded factual allegations of the complaint to determine whether they offer plausible support for the legal conclusions.[5]

### *B. Agency liability*

#### 1. Agency liability under Oregon law

Under Oregon agency law, person 1 is liable as principal for the act of person 2 as agent only if one of two conditions is satisfied. The first condition is that person 2 had actual authority to act as the agent of person 1. Actual authority can be created expressly or by implication.[6]

The second condition is that person 2, although lacking actual authority, appeared to have authority to act as person 1's agent. This second condition is only satisfied if the appearance of authority is created by words or conduct of person 1.[7] The unilateral acts of person 2 can't create apparent authority, and there is apparent authority only if the plaintiff reasonably relied on the appearance of authority.[8]

---

[4] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).
[5] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
[6] Eads v. Borman, 351 Or 729 (2012).
[7] *Id.*
[8] *Id.* at 737.

### 2. Agency allegations

Cattell's allegations that Connor was acting in the scope of his employment with PwC and that he held himself out as its agent are legal conclusions. Therefore, I must examine the factual allegations of the complaint to see whether they support those conclusions.

The complaint makes the following specific allegations regarding the relationship between Connor and PwC:

- Connor is employed in PwC's Portland office.[9]
- When he committed the acts alleged in the complaint, he was acting within the scope of his position at PwC, or he held himself out as PwC's agent.[10]
- He used PwC's offices and electronic systems to "cloak himself" in apparent authority to act for PwC.[11]
- He assured Cattell "that he would work with his team at PWC to analyze the books and records of [Cattell's] partnership . . ..”[12]
- On August 2, 2017, Cattell and Connor exchanged emails through Connor's PwC email account regarding the restructuring of Cattell's partnership.[13]
- On December 22, 2017, Connor instructed Cattell to stop contacting him through PwC.[14]

---

[9] Complaint at 3, ¶ 3.
[10] Complaint at 2, ¶ 2.
[11] Complaint at 2, ¶ 2.
[12] Complaint at 13, ¶ 48.
[13] Complaint at 17, ¶ 62.
[14] Complaint at 19, ¶ 69.

- On December 26, 2018, Connor sent Cattell a letter saying that he was *not* acting as an accountant for PwC when he worked on the partnership account, but that statement was false.[15]
- Through December 26, 2018, "Connor was either acting as an agent of PwC or was clocked [*sic*] in apparent authority to act as an employee of PwC."[16]

**3. The complaint fails to state claims based on apparent authority.**

The parties focus most of their attention on the apparent-authority theory, so I will start there. The only allegations in the complaint that might support this theory are that Connor was an employee of PwC, communicated using his work email address, and told Cattell that his PwC team would work on the account.

I agree with PwC that these allegations do not support the apparent-authority theory. The Oregon Supreme Court has consistently held that apparent authority can only be found where the acts or words demonstrating authority are not those of the purported agent, but instead those of the purported principal.[17] The complaint contains no allegation of any statement or action of PwC that could have led Cattell to believe that Connor was acting as its agent. Instead, it asserts that Connor himself claimed to be acting on behalf of PwC—although he later emphatically denied it—and that Connor gave that impression by (at first) responding to emails that Cattell sent to his PwC email account.

To find apparent authority based on these facts would require that I conclude that *every* act of an employee is within the employee's apparent authority to act on behalf of the employer. That is, I would have to find that an employer, solely by hiring an employee and giving the

---

[15] Complaint at 16, ¶ 60.
[16] Complaint at 25, ¶ 93.
[17] Harkness v. Platten, 359 Or 715, 722 (2016); *Eads*, 351 Or at 737; Taylor v. Ramsay-Gerding Constr. Co., 345 Or 403, 410-11 (2008); Badger v. Paulson Inv. Co., Inc., 311 Or 14, 24 (1991).

employee an email address, is representing to the world that the employee is its agent for all purposes. Cattell cites no authority for that proposition.

Cattell does cite a provision of the Restatement (Third) of Agency that "an agent acts with apparent authority in making a fraudulent misrepresentation to a third party when the third party reasonably believes that the agent has authority to make the particular representation on behalf of the principal."[18] But I don't interpret that provision to have implicitly abrogated the usual requirement that the third party's reasonable belief be induced by the principal. Indeed, as recently as 2016 (ten years after the publication of the Restatement), the Oregon Supreme Court restated the conventional rule that "an agent's actions, standing alone, will not give rise to apparent authority."[19]

Cattell can't succeed on an apparent-authority theory unless he can point to some more specific actions or representations by PwC that caused him to believe that Connor was acting on PwC's behalf when he worked on the partnership account.

**4. The complaint does state claims based on actual authority.**

PwC's reply argues that Cattell relies in his response on a theory of liability (respondeat superior) that was not pleaded in the complaint. I disagree; the complaint alleges that Connor was acting within the scope of his position as a PwC employee and with actual authority to act on behalf of PwC.[20] When it comes to intentional financial torts allegedly committed in the scope of an employee's job duties, it's not clear that there is any distinction between respondeat superior and actual agency. Respondeat superior is more commonly relevant to "physical torts" such as negligence.[21] It would be peculiar to argue, for instance, that a trucking company is

---

[18] RESTATEMENT (THIRD) OF AGENCY § 7.08 (AM. LAW INST. 2006).
[19] *Harkness*, 359 Or at 722.
[20] Complaint at 2, ¶ 2.
[21] *Eads*, 351 Or at 738.

"bound" by its driver's act of running over a pedestrian. Courts instead say that the employer is "vicariously liable" for the acts of its employee in the course of his or her employment, because the employer exercises control over the employee's conduct on the job.[22] Where, as here, the alleged tort is intentional and nonphysical, I see no meaningful distinction between respondeat superior and agency; in either case, what matters is whether the employee (Connor) was carrying out his employer's (PwC's) business. In any event, the label that the plaintiff places on a theory isn't important. What matters is whether the complaint alleges facts that would support the theory.

The complaint alleges that Connor worked for PwC as a "Senior Associate"[23] and that he was "acting in the course and scope of his position with PwC."[24] The latter allegation is broad and arguably conclusory, and PwC argues that it therefore doesn't suffice to defeat the motion to dismiss. More specifically, PwC argues that Cattell must allege facts to show that it explicitly authorized Connor to handle the account.[25]

But it's hard to imagine what more specific facts he could even theoretically have asserted to support the assertion that Connor was acting on PwC's behalf. I would be stretching *Twombly* and *Iqbal* too far if I insisted that Cattell make allegations describing the precise nature of Connor's employment or the conversations he might or might not have had with his employer regarding this account. Those allegations would be nothing better than speculation and would add nothing to the broader allegation that Cattell made in the complaint. Under the circumstances, the allegation that Connor was "acting in the course and scope of his position" is about as precise as Cattell could have been in his complaint.

---

[22] *Id.*
[23] Complaint at 2, ¶ 2.
[24] Complaint at 2, ¶ 2.
[25] DI 42 (reply) at 5, citing Taylor v. Ramsay-Gerding Constr. Co., 345 Or. 403, 410 (2008).

The Supreme Court's concern in *Twombly* and *Iqbal* was that defendants should not be subjected to the cost of discovery based on allegations that, while consistent with a possibility of liability, are insufficient to make liability plausible[26]—in other words, a plaintifff can't rely on conjecture and innuendo and invite the court to make a logical leap to infer the defendant's liability. But to infer that an accountant who undertook to handle a financial account was doing so on behalf of his accounting-firm employer isn't a logical leap. It is entirely plausible and therefore doesn't offend the *Twombly* doctrine. Whether it is true is a question for trial or summary judgment.

PwC also argues that Cattell did not pay Connor for his financial advice, and that it would be implausible to infer that an accounting firm would authorize its employee to give free advice on its behalf. But I find no allegation in the complaint that Connor was working for free. On a motion to dismiss, the complaint contains the universe of facts that I may consider. The complaint does contain, as an attachment, a letter allegedly written by Connor in which he claims that he was not acting in a professional capacity and did not get paid for his work.[27] But the complaint doesn't allege that the statements in the letter are true—to the contrary, the complaint expressly contradicts Connor's statement that he was not working for PwC. So I can't treat Connor's statements in the letter as admissions by Cattell.

I also can't accept PwC's invitation[28] to treat the complaint's allegation that Connor was acting on behalf of Victoria as conclusively refuting the allegation that he was acting in the scope of his employment. Both allegations can be true. It's possible that Connor was acting "on behalf of" Victoria in the sense that he was acting for her benefit, while also acting within the scope of his job at PwC.

---

[26] *Iqbal*, 556 U.S. at 678-79.
[27] Complaint, Ex. 3.
[28] Reply at 5.

Even if it's true that Cattell didn't pay Connor and that Connor was acting in the interests of his mother, I would be reluctant to conclude from those facts alone that Connor was not acting in the scope of his duties at PwC. Perhaps he deceived his employer into thinking it would be paid. Or perhaps he deceived Cattell into thinking that he didn't expect payment.

At the motion hearing, PwC argued that the complaint's actual-authority theory fails because it doesn't state the type of work that PwC does, the type of work that it authorized Connor to do, or what authority it gave him. I disagree. By alleging that Connor's December 26, 2018, letter to Cattell falsely stated that Connor was not working as an accountant at PwC,[29] Cattell at least implicitly alleged the Connor was working as an accountant at PwC, whose business was accounting.

Because the complaint sufficiently states its three claims based on a theory of actual authority, I won't dismiss the claims.

### *C. Timeliness of fiduciary-duty claim*

#### 1. The fiduciary-duty claim is untimely under state law.

Finally, PwC argues that the fiduciary-duty claim is barred by the two-year statute of limitation in ORS 12.110.

PwC alleged in the motion that the complaint was filed on January 23, 2020.[30] Cattell did not dispute that date. The two-year limitation period begins to run when the plaintiff knows or should know of harm, causation, and tortious conduct. PwC correctly argues that the complaint demonstrates that Cattell was actually aware of all three elements no later than December 22, 2017.[31] The complaint unambiguously alleges that Cattell was then aware that "Connor was engaging in a systematic plan to lock the Plaintiff out of all the partnership accounts and divert

---

[29] Complaint at 16, ¶ 60.
[30] Motion at 16.
[31] Adv. Proc. No. 19-3123, DI 13 (motion to dismiss) at 15.

as much money as possible to Victoria at the expense of the plaintiff."[32] Cattell doesn't dispute that the complaint was filed more than two years later.

Cattell argues that he was not actually aware that he had been harmed until the sale of his property on September 13, 2019. This argument is contradicted by the complaint. He might not have known the extent of his injury until the property was sold, but he has admitted that he knew he was harmed.

The limitation period began to run no later than December 22, 2017. Under state law, the complaint was untimely when filed in January 2020.

**2. A motion to dismiss a complaint as untimely need not demonstrate the absence of tolling.**

Cattell argues that a motion to dismiss a complaint as untimely must demonstrate that the complaint "would not permit the plaintiff to prove that the statute was tolled," quoting the Ninth Circuit's 1998 decision in *Pisciotta v. Teledyne Industries, Inc.*[33] There, the court said that a motion to dismiss on limitations grounds can be granted "only if the assertions in the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." The plaintiff did raise a tolling defense, which the district court and court of appeals found legally insufficient.

Nothing in *Pisciotta* suggested or is consistent with the implication that a motion to dismiss on limitations grounds is legally insufficient unless the defendant-movant demonstrates that the complaint's allegations foreclose a tolling argument. Reading *Pisciotta* 's statement of law with its procedural facts, one could infer that a plaintiff may defeat a motion to dismiss by raising a tolling defense that's found in, or at least is consistent with, the complaint's allegations. But the converse (that a plaintiff who says nothing about tolling can defeat a motion to dismiss

---

[32] Complaint at 19, ¶ 70.
[33] 91 F.3d 1326, 1332 (9th Cir. 1996).

based on limitations simply by pointing to the movant's failure to disprove the possibility of tolling) can't similarly be inferred from *Pisciotta*.

That reading of *Pisciotta* is also consistent with the district-judge decision that Cattell cites, *Frances v. Gucci America, Inc.*,[34] which dismissed a complaint as time-barred because the "[p]laintiff has not presented any facts alleging delayed discovery of her claim or to support equitable tolling of the statute of limitations."

Despite quoting *Pisciotta*, Cattell doesn't raise any tolling defense (other than under bankruptcy law, discussed below). I disagree with his reading of *Pisciotta* to require that party moving to dismiss a complaint as untimely affirmatively disprove the possibility of a tolling defense that the plaintiff doesn't raise in the complaint or in his objection to the motion.

**3. Bankruptcy Code § 108 makes the fiduciary-duty claim timely.**

Under section 108(a) of title 11, U.S. Code (Bankruptcy Code), if a claim that was property of the debtor and that has become estate property would have been timely under state law if filed on the petition date, "the trustee" may file the complaint within two years after the petition date. (Unless specified otherwise, references to "sections" are to sections of the Bankruptcy Code.)

Cattell erroneously cites section 1107 as authority for application of section 108(a) to this action. But section 1107 doesn't apply in a chapter 13 case, and PwC argues for that reason that section 108(a) doesn't apply to Cattell's claim.

Although section 1107 doesn't apply in chapter 13, section 1303 does. Like section 1107, section 1303 reassigns certain trustee powers to the debtor. Specifically, it assigns to the debtor, exclusive of the trustee, the rights and powers of a trustee under certain Bankruptcy Code sections, including section 363(b), which permits the trustee to "use" estate property. Because no

[34] 543 F.Supp.2d 1227, 1231 (D. Or. 2008).

plan has yet been confirmed in this case, the claims against PwC are estate property, and Cattell has the exclusive right to use the claims by suing on them.

But for section 1303, an action on a prepetition claim that was not time-barred at case commencement could be brought under section 363(b) by the chapter 13 trustee, who would have the benefit of the two-year grace period in section 108(a). The grace period is thus a procedural right inherent in and inseparable from the trustee's section 363(b) substantive right to use estate property. The plain meaning of section 1303 is that its assignment to the debtor of the trustee's rights and powers under section 363(b) includes all of those rights and powers—including the trustee's right to bring an action on an estate-property claim within the grace period. To refuse to apply section 108(a) to a chapter 13 debtor pursuing an estate claim would deprive the debtor of an essential part of the bundle of rights that the trustee could exercise under section 363(b) but for section 1303 and that are assigned in their entirety by section 1303 to the debtor. A bankruptcy judge for the District of Columbia came to the same conclusion in 2008 in *In re Dawson*.[35]

Reading section 1303 to apply the grace period to a chapter 13 debtor's estate-property action is bolstered by the prefatory phrase in section 1303, making the assignment of trustee claims to the debtor "[s]ubject to any limitations on a trustee under this chapter." But for section 1303, an action by a chapter 13 trustee on an estate-property claim under the authority of section 363(b) would be subject to the time limitation in section 108(a). Thus, the rights and powers under section 363(b) assigned to the debtor are "subject to" the same grace period.

Depriving a chapter 13 debtor of the grace period because section 1303 doesn't enumerate section 108 would be inconsistent with a chapter 13 debtor's right to bring trustee

[35] 411 B.R. 1, 28 (Bankr. D.D.C. 2008).

avoidance actions. I agree with the Ninth Circuit Bankruptcy Appellate Panel's 2004 holding in *Houston v. Eiler (In re Cohen)*[36] that section 1303 isn't an exclusive list of all trustee powers exercisable by a chapter 13 debtor and that a debtor has concurrent standing with the trustee to bring a trustee avoidance action without first obtaining special permission from the court. The BAP has followed *Cohen* in subsequent nonprecedential decisions through 2015.[37]

The BAP's comment, in a 2008 nonprecedential decision's footnote, that a chapter 13 debtor's standing to bring a trustee avoidance action under *Cohen* could depend on the action being brought for the benefit of the estate[38] does not apply in this action. The claims here are nonavoidance claims that can be brought only by Cattell. And, although his current plan, of which I take judicial notice,[39] doesn't address proceeds of claims against PwC, the plan was filed three months before he filed his action against PwC, it does expressly provide for payment to the trustee of net proceeds of other litigation claims, and Cattell still has an opportunity before confirmation to revise the plan to contribute any net PwC proceeds or demonstrate why he should not be required to do so.

I disagree with the reasoning of the decisions cited by PwC holding that section 108(a) doesn't apply to an action brought by a chapter 13 debtor.[40] None of them reconciles the right and power of the chapter 13 trustee, absent section 1303, to bring an estate-property action

---

[36] 305 B.R. 886, 895-98 (9th Cir. B.A.P. 2004).
[37] Hernandez v. Wells Fargo Bank (*In re* Hernandez), No. NC-15-1044-TaDJu, 2015 WL 6736698, at *4 (9th Cir. B.A.P. Nov. 3, 2015); Silva v. The Bollag Family Trust (*In re* Silva), No. 9:10-bk-14135-PC, 2015 WL 1119442, at *5 (Bankr. C.D. Cal. Mar. 9, 2015).
[38] Shawhan v. Shawhan (*In re* Shawhan), No NV-08-1049-JuKuK, 2008 WL 8462964, at *9 n. 19 (9th Cir. B.A.P. July 7, 2008).
[39] Case No. 19-33823, docket item 15 at 6, ¶ 15; O'Rourke v. Seaboard Surety Company (*In re* E.R. Fegert, Inc.), 887 F.2d 955 (9th Cir. 1989).
[40] *In re* Hatton, No. 17-1053-BAH, 2018 AWL 770363, at *5 (Bankr. D.N.H. Feb. 7, 2018); *In* re Johnson, No. 08-4068, 2009 WL 2259088, at *2 (Bankr. S.D. Ill. July 29, 2009); Estate of Carr v. United States, 482 F.Supp.2d 842 (W.D. Tex. 2007).

within the section 108(a) grace period, on one hand, with treating section 1303 as assigning the trustee's rights and powers under section 363(b) stripped of the trustee's right to the grace period, on the other hand. The authority cited by *Johnson* to support its statement regarding the purpose of section 108(a) is indirectly the 1977 House Judiciary Committee Report.[41] I find no statutory ambiguity warranting resort to legislative history. Even if there were ambiguity, the actual report language ultimately quoted doesn't support *Johnson*'s statement of the section's purpose as a limitation on its effect. The report states that "subsections (a) and (b) [of section 108], derived from Bankruptcy Act sec. 11, permit the trustee, when he steps into the shoes of the debtor, an extension of time for filing of an action or doing some other act that is required to preserve the debtor's rights." That language describes the effect of the statute, not its purpose. It doesn't support reading the statute to apply to an action to enforce a chapter 13 trustee's right and power to collect an estate-property claim only if the plaintiff is the trustee, rather than the debtor enforcing the trustee's right and power under the express authority of section 1303.

Thus, section 1303 entitles a chapter 13 debtor to exercise the section 108(a) grace period. I reject the statute-of-limitation defense as it applies to the fiduciary-duty claim.

**4. I will deny Cattell's post-hearing motion to supplement his argument.**

After the motion hearing, Cattell filed a motion for leave to submit additional authority on the motion to dismiss.[42] PwC opposed it.[43]

[41] H.R. Rep. No. 95-595, at 318 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5963, 6275, *quoted in* Independent Fire Ins. Co. v. Pender (*In re* Phillip), 948 F.2d 985, 987 (5th Cir. 1991), *cited in In re* Ranasinghe, 341 B.R. 556, 567 (Bankr. E.D. Va. 2006), *cited in Johnson*, 2009 WL 2259088, at *3.
[42] DI 49.
[43] DI 50.

Because the additional-authority motion doesn't identify any reason why Cattell was unable to identify the additional authority at the hearing (and I have otherwise determined to deny the motion to dismiss), I will deny the additional-authority motion.

## IV. Conclusion

I will deny PwC's motion to dismiss and Cattell's additional-authority motion.

I previously stayed discovery pending resolution of the motion. I will now allow discovery to and by PwC to begin.

I will prepare an order.

# # #